UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| GARY W. PAGE and LORIE PAGE, | ) | |
| | ) | CIV. 09-5098 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER GRANTING** |
| | ) | **HERTZ'S MOTION TO** |
| HERTZ CORPORATION; | ) | **COMPEL OR FOR SANCTIONS** |
| HERTZ RENT A CAR, and | ) | [Docket No. 42] |
| KAREN S. KNIPPLE, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the court pursuant to a complaint alleging

negligence and strict liability by plaintiffs Gary and Lorie Page, husband and

wife, against defendants arising out of an August 6, 2009, motor vehicle

accident in South Dakota.  See Docket No. 1.  Pending before the court is a

motion for sanctions or, in the alternative, to compel, and to extend expert

disclosure deadlines [Docket No. 42] filed by Hertz Corporation and Hertz Rent

A Car (collectively "Hertz") arising from a dispute between the parties regarding

an independent medical examination ("IME") scheduled by Hertz in Colorado.

The district court, the Honorable Jeffrey L. Viken, referred the motion to this

magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A).  See Docket

No. 57.

1

**FACTS**

The facts pertinent to the motion pending before this court are as follows. Gary and Lorie Page reside in Hillsdale, Ontario, Canada.  On August 6, 2009, Gary Page was operating a motorcycle on Interstate 90 near Piedmont, South Dakota, when he was involved in an accident with Karen Kipple, who was operating a motor vehicle owned by Hertz.  See Docket No. 1 at ¶¶ 10-11.  As a result of the accident, Mr. Page asserts that he suffered and sustained "catastrophic injuries" including a "occipital condyle fracture, soft tissue injuries to his cervical spine, multiple thoracic spinal fractures, a loss of consciousness due to a concussion, a rotator cuff tear to his left shoulder, multiple lower extremity injuries," including amputation of his left leg below the knee.  See Docket Nos. 1, 53.  Mr. Page also alleges that he "sustained a permanent traumatic brain injury and suffers from a chronic pain syndrome as a result of the motorcycle accident."  See Docket No. 53 at pages 27-28. Mr. Page's expert, Dr. Kurzman, has issued an opinion supporting this latter assertion of injury.

On April 26, 2011, Hertz, by way of e-mail, advised counsel for Mr. Page that arrangements had been made for Mr. Page to see Dr. Jeffrey Wunder for an IME in Denver, Colorado, on May 26, 2011, and Patrick Renfro for a vocational rehabilitation interview in Greeley, Colorado, on May 27, 2011.  See Docket No. 55-1 at page 3.  On April 27, 2011, counsel for Mr. Page replied by

saying, "I assume [plaintiffs] would have to fly to Denver and drive to Greeley, is that correct?"  Id.  An e-mail that same day confirmed that "they'll need to fly into Denver and rent a car."  Id.  By way of additional e-mail communication it was established that Hertz would schedule a shuttle service or taxi to transport both Mr. and Mrs. Page from the airport in Denver to their hotel and then to Mr. Page's appointments in both Greeley and Denver, Colorado.  Id. at pages 1-2.

On May 11, 2011, an e-mail was sent to counsel for Mr. Page indicating that in addition to the already scheduled appointments with Dr. Wunder and Mr. Renfro, Hertz had scheduled an independent neuropsychological evaluation with Dr. Gregory Thwaites.  See Docket No. 53 at page 31.  The e-mail listed the revised schedule as follows:

| | | |
|---|---|---|
| Thursday May 26 | 10:15 a.m. | Dr. Wunder |
| Thursday May 26 | 3:00 p.m. | Patrick Renfro |
| Friday May 27 | 8:00- 5:00 | Dr. Thwaites |

Id.  The e-mail also indicated that it was Hertz' intention "to book the above travel arrangements tomorrow afternoon at 3:00 Mountain Time.  Please advise if there is any difficulty at all with the above."  Id.  There is nothing in the record indicating that Mr. Page objected to the proposed schedule.  On May 23, 2011, an e-mail was again sent to counsel for Mr. Page informing them that travel arrangements had been made and providing Mr. Page with a copy of the

flight itinerary, hotel confirmation, and the shuttle services from Greeley to

Denver.[1]  See Docket No. 47-1.

Mr. Page asserts that he had several issues with his travel arrangements.

See Docket No. 53 at pages 5-6.  Mr. Page encountered a problem with

transportation from his hotel to Dr. Wunder's office on May 26, 2011.  Id.

Mr. Page also encountered a problem with transportation from his appointment

in Greeley, Colorado, to Denver, Colorado, to attend his appointment with

Mr. Renfro.  Id.  Apparently the shuttle driver hired by Hertz to transport

Mr. Page from Greeley to Denver, a ride of approximately one hour, got lost and

had to ask for directions, adding additional time to the drive.  Id. at page 4.

However, Mr. Page was not late for his appointment with Mr. Renfro.  See

Docket No. 55-3.  Additionally, after completion of the interview with

---

[1] As an aside from the travel arrangements and scheduled appointments, a dispute arose between Mr. Page and Hertz regarding whether a vocational consultant would be allowed to attend the vocational evaluation by Mr. Renfro. This dispute was eventually resolved in a motion to compel hearing on May 26, 2011, in which the district court held that Mr. Page would be permitted to have Ms. Cheryl Rahm-McGrath present for Mr. Renfro's interview.  However, "because Plaintiff's counsel had not intended or expected to have Ms. Rahm-McGrath attend the vocational interview, she had completed her work with the physiatry IME and had been told that she would not be allowed in the Thwaites IME, she was on her way back to Sioux Falls before we could catch up with her to try to attend the Renfro interview."  See Docket No. 53 at pages 3-4. Ms. Rahm-McGrath did not attend the interview with Mr. Renfro or Dr. Thwaites.

Mr. Renfro, Mr. Page "had to endure a long return ride during rush hour from Denver back to Greeley." See Docket No. 53 at page 4.

The following day, May 27, 2011, Mr. Page awoke to attend the session with Dr. Thwaites and discovered that he had "no transportation from the hotel to Dr. Thwaites' office and ended up having to hire a taxi cab and pay for it out of his own pocket." Id. However, as indicated in an e-mail exchange between counsel for Mr. Page and Hertz, counsel for Mr. Page was aware that there was no shuttle from the hotel to Dr. Thwaites office so counsel for Mr. Page "advised [Mr. and Mrs. Page] to take a taxi to Dr. Thwaites office in the morning and keep the receipts." Id. Finally, Mr. Page asserts that he also "encountered difficulty sleeping both of the nights he was at the motel in Greeley in part because he was in extreme pain and in part because there was excessive noise in the motel do [sic] to some maintenance being carried out." Id.

According to Dr. Thwaites' progress notes regarding the examination, Mr. Page arrived at Dr. Thwaites' office for the IME on May 27, 2011, shortly before 8:00 a.m. See Docket No. 43-3. Upon arrival, Mr. Page filled out various disclosure forms and was told the purpose of the evaluation, Dr. Thwaites' background and training, and that Dr. Thwaites had been "hired by the defense to conduct an independent neuropsychological evaluation." Id.

Dr. Thwaites noted that Mr. Page appeared to be "quite angry with his body language" and "did not say a word when [Dr. Thwaites] introduced [himself] and gave him the disclosure information." Id. As the interview was beginning, Dr. Thwaites began asking questions of Mr. Page regarding his developmental history, however, Mr. Page "responded with many 'I don't know' responses and was very abrupt in his responses." Id. Dr. Thwaites then began into the neurobehavioral status examination, which Mr. Page recorded. Id.

However, Dr. Thwaites reported that "within five minutes of starting the neurobehavioral status examination, Mr. Page stated that he 'didn't feel good' about this examination, again queried the basis for the evaluation and told [Dr. Thwaites] that he had 'one of these just two weeks ago' with his own expert, Dr. Kurzman, and that he did not understand why he had to be there for the examination with Dr. Thwaites. Id. Dr. Thwaites reiterated to Mr. Page the reason for the examination-that he had been hired by the defense to conduct and independent examination to understand his current level of functioning nueropsychologically. Id. However, Mr. Page continued to indicate that he did not feel good about the examination. Id.

As a result of Mr. Page's comments, Dr. Thwaites told Mr. Page that he could take a break at any point and further indicated to Mr. Page that "it was his choice to either participate in the examination or not, and whether he stay for the examination or not." Id. Dr. Thwaites did indicate to Mr. Page that "if

he did stay for the examination," Dr. Thwaites' "consultation would only be helpful if he participate[d] fully in the examination, including both the interview and the testing process." Id. Mr. Page reiterated to Dr. Thwaites that he "did not like the idea of being [at the exam] and stated, 'I can't even breathe in here,' referring to the [exam] room." Id.

After this conversation with Mr. Page, Dr. Thwaites asked Mr. Page if he wanted to take a break and Mr. Page indicated that he would. Id. Dr. Thwaites encouraged Mr. Page to "contact his attorney or any other individual that he would like to discuss the case with" and "urged him to consider whether or not he would like to stay for the examination" and that "he should talk to his lawyer about that issue." Id. After the break, Mr. Page told the office manager that "this just isn't going to happen," that "this should have been the first examination that I did," and that Mr. Page had "seen too many doctors [that] week." Id. Mr. Page indicated to the officer manager that he did not wish to continue the examination and left Dr. Thwaites' office shortly after 9:00 a.m. Id. Dr. Thwaites indicated in his summary report that the "neurobehavioral status examination really never got started, and no testing was completed." Id.

On July 13, 2011, Hertz sent an e-mail to Mr. Page's counsel regarding whether Mr. Page would be able to return to Colorado to participate in the IME with Dr. Thwaites at his own expense and regarding recovering the costs

7

associated with the failed IME originally scheduled with Dr. Thwaites.[2]  See

Docket No. 47-5 at page 2.  Counsel for Mr. Page replied on July 14, 2011,

indicating that it was Mr. Page's position that "he is not willing to return to

Greeley for an IME with Dr. Thwaites," but that Mr. Page would only make

himself available for a neuropsychological IME, should Hertz "choose to do one,

at a more convenient location such as in Toronto or upper New York."  Id.

Counsel for Mr. Page also indicated that "due to the circumstances, we are also

not willing to pay for the cost of his travel to such an IME nor will we

reimburse for the failed attempt to get the one done in Colorado," and that "if

that means a motion, so be it."  Id.

On August 2, 2011, Hertz filed a motion for sanctions or, in the

alternative, to compel, and to extend expert disclosure deadlines arising from

the dispute between the parties regarding the failed IME in Colorado.  See

Docket No. 42.  Hertz, in their motion, moved this court to dismiss this action

with prejudice, or in the alternative to bar Mr. Page from presenting

neuropsychological evidence in support of his claim at trial.  See Docket Nos.

43, 54.  Hertz also asks, in the alternative, that this court enter an order

compelling Mr. Page travel to Colorado to complete an IME with Dr. Thwaites at

his own expense and to reimburse Hertz for the cost of the failed IME and

---

[2]  The e-mail indicated that counsel for both parties had visited on both June 20, 2011, and June 29, 2011, about whether Mr. Page would return to Colorado.

partial travel expenses, to extend the deadline for Hertz to designate a neuropsychologist as an expert, and to compel Dr. Kurzman, Mr. Page's physician, to provide Hertz with the raw data Dr. Kurzman used in his nueropsychological evaluation of Mr. Page . <u>See</u> Docket Nos. 43, 54.

## DISCUSSION

### A.    **Meet-and-Confer Requirement**

Hertz asserts that it contacted counsel for Mr. Page prior to filing the instant motion and attempted, unsuccessfully, to arrive at a mutually-agreeable solution. <u>See</u> Docket No. 44. Mr. Page does not take issue with this assertion. Accordingly, the court finds that Hertz has satisfied the meet-and-confer prerequisite to filing the instant discovery motion. <u>See</u> Fed. R. Civ. P. 37(a)(1); D.S.D. LR 37.1.

### B.    **Motion to Compel**

Hertz argues that they are entitled to conduct an IME on Mr. Page because he has placed his nueropsychological condition in issue in this lawsuit. <u>See</u> Docket No. 43 at page 14. Mr. Page resists the IME, arguing that because Mr. Page has been seen by his own neuropsychologist, Dr. Kurzman, and because Hertz has had the opportunity to cross examine Dr. Kurzman in a deposition, that "Hertz can hardly argue that Plaintiff does not suffer from a serious brain injury." <u>See</u> Docket No. 53 at page 13. Additionally, Mr. Page argues that it is not reasonable to require Mr. Page to travel to Colorado to

undergo the IME, but suggests that Hertz should schedule the IME in Toronto or upper New York.  Id.

### 1.    Standard Applicable to Rule 35 Motions

Rule 35 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> (a)    Order for an Examination.
>
>   (1)    *In General.*  The court where the action is pending may order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.  The court has the same authority to order a party to produce for examination a person who is in custody or under its legal control.
>
>   (2)    *Motion and Notice; Contest of the Order.*  The order:
>
>     (A)    may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>
>     (B)    must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

See Fed. R. Civ. P. 35(a).  Once the examination has been performed, the examiner must produce a written report that details his examination findings including diagnoses, conclusions, and the results of any tests.  See Fed. R. Civ. P. 35(b).  This report must be made available to the party who submitted to the

examination.  Id.  No patient-physician privilege applies to the report of the independent examination.  Id.

A party seeking an order for a Rule 35 IME must show two things: (1) that the plaintiff has put his physical or mental condition "in controversy" and (2) that there is "good cause" for the IME.  Schlagenhauf v. Holder, 379 U.S. 104, 117-118 (1964).  The movant must show that "the condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."  Id. at 118.  A mere showing of relevancy is insufficient to establish "good cause."  Id.  In addition, the court should consider whether the desired information can be obtained by means other than an IME.  Id.

Even if a physical examination is warranted under Rule 35, the moving party has no absolute right to compel that examination by a particular physician of its own choosing.  McKitis v. DeFazio, 187 F.R.D. 225, 227 (D. Md. 1999); Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D. Pa. 1990); 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure § 2234.2 at 485 (2d ed. 1994) (hereinafter "Wright & Miller"). However, if there is no serious objection to the examiner selected by the moving party, it is usually best to appoint the doctor of the moving party's choice.  8A Wright & Miller § 2234.2 at 485; Holland v. United States, 182 F.R.D. 493, 494-495 (D.S.C. 1998) (refusing plaintiff's request that the court appoint

someone other than defendant's chosen physician to conduct the exam where there was no showing of personal bias on the part of defendant's physician nor any allegation that the physician would use discredited or harmful techniques to examine the plaintiff); DeFazio, 187 F.R.D. at 227 (ordering IME with defendant's chosen physician where plaintiff raised no issues as to that physician's qualifications to conduct the IME).

The reason for such an approach is that the plaintiff is allowed to select his or her own doctor to testify as to the plaintiff's physical condition, so fairness dictates that the defendant have a similar right.  8A Wright & Miller § 2234.2 at 485.  Rule 35 is "to be accorded a broad and liberal treatment, to effectuate the purpose [of the rules of civil procedure] that civil trials in the federal courts no longer need be carried on in the dark."  Schlagenhauf, 379 U.S. at 114-115; Herrera, 474 F.3d at 690.

Mr. Page's objections to Dr. Thwaites' examination of him have nothing to do with Dr. Thwaites' qualifications nor does Mr. Page make any allegations of bias.  Rather, Mr. Page objects to the examination on the basis that (1) Dr. Thwaites is too far away from Mr. Page's home, and (2) Mr. Page's doctor asserts that Mr. Page suffers from a traumatic brain injury, so the question of Mr. Page's neuropsychological condition is not truly "in controversy."  The court addresses these arguments in reverse order.

12

### a. Whether Mr. Page's Neuropsychological Function is "In Controversy"

The Supreme Court has held that when a plaintiff in a negligence action asserts mental or physical injury, he "places that mental or physical injury clearly in controversy and provides the defendant with good cause [under Rule 35] for an examination to determine the existence and extent of such asserted injury." Schlagenhauf, 379 U.S. at 119.  See also Holland, 182 F.R.D. at 494 (plaintiff in medical malpractice action who alleged disfigurement and total disability as a result of malpractice puts his physical condition in controversy for purposes of Rule 35 exam).  Hertz is not bound to accept the opinions of Mr. Page's physician on the question of the extent or permanence of Mr. Page's brain injury.  See Jackson v. Entergy Operations, Inc., 1998 WL 28272, *2 (E.D. La. 1998) (holding that a plaintiff may not avoid an examination on the grounds that other sources of information, "including reports and depositions of plaintiff's treating physicians, are available").  The court concludes that Mr. Page's neuropsychological function is genuinely in controversy in this case.

### b. Whether Travel to Colorado is Unduly Burdensome

As to Mr Page's objection to having to travel from his home in Hillsdale, Ontario, Canada, to Dr. Thwaites' office in Greeley, Colorado, the court finds under the facts of this case that such travel is not unreasonable.  Mr. Page originally agreed to participate in the IMEs in the Denver area, traveled there at Hertz's expense, and then failed to participate in the IME with Dr. Thwaites.

After attempts by Hertz to reschedule the IME in Denver, counsel for Mr. Page indicated that Mr. Page would not participate in the IME in Denver, but that counsel "would be willing to make him available for a neuropsych IME...at a more convenient location such as in Toronto or in upper New York." See Docket No. 47-5.  Mr. Page now argues that this communication to counsel was "merely a suggestion to make it easier and more convenient for [Mr. Page] rather than going all the way back to Denver." See Docket No. 53.

Generally, a plaintiff is required to pay his own travel expenses to an examination in the forum state.  See McClosky v. United Parcel Serv. Gen. Serv. Co., 171 F.R.D. 268, 270 (D. Ore. 1997) (holding that "the general rule is that the party being examined must pay his or her own travel expenses to an examination in the forum state").  In this case, Mr. Page chose South Dakota as the forum to bring his action, therefore, it would not be unreasonable to require Mr. Page to travel to Rapid City, South Dakota, at his own expense to participate in an IME.

In this case, Hertz has requested that Mr. Page travel to Denver, Colorado, to participate in the IME with Dr. Thwaites.  Hertz argues that its selection of a neuropsychologist in the Denver, Colorado, area actually provided Mr. Page with a "more accessible IME that if it had been scheduled in Rapid City" because there is a direct flight between Toronto and Denver, "while a

flight to Rapid City would likely have required an airplane change in Denver anyway."  See Docket No. 43 at page 10.

In DeNeui v. Wellman, 2008 WL 4065816, *4-5 (D.S.D. 2008), the court held that it was not unreasonable for a Minnesota plaintiff, who had brought suit in the Western Division of the District of South Dakota, to travel to Omaha, Nebraska to participate in an IME because the travel distance was significantly shorter that it would have been had the plaintiff been required to travel to Rapid City, South Dakota.  Additionally, in Reed v. Marley, 321 S.W.2d 193, 195 (Ark. 1959), the court held that the mere fact that the IME requested was out of state did not, by itself, render the request that the plaintiff participate in the IME unreasonable.

In this case, the court notes that any inconvenience imposed on Mr. Page by requiring him to meet with Dr. Thwaites in Colorado is ameliorated by several factors.  First, Mr. Page is a named party in this lawsuit, so any inconvenience to him is part and parcel of the burden he himself has undertaken to bring these claims to trial.  Second, the amount of travel and the timing of that travel, that Mr. Page has been willing to undertake on his own in order to consult with his own medical experts in Rapid City, South Dakota, and Chicago, Illinois; to spend time at the Sturgis motorcycle rally; as well as a week-long trip to Cuba augers in favor of ordering this IME with Dr. Thwaites. The same disabling conditions that Mr. Page alleges make travel to Denver

difficult for him existed when he traveled roughly the same and far more significant distances for his own ends.  Finally, Hertz went to great lengths to make the trip to Colorado as convenient for Mr. Page as possible.  Hertz paid the cost of airfare for both Mr. and Mrs. Page; arranged for wheelchair assistance at the airports; for a hotel, and for shuttle service from the airport to the hotel and two of the appointments.  See Docket No. 43-1.

Given the distances Mr. Page has traveled at his own election while burdened with the same physical conditions, the court concludes that it is not unreasonable to require Mr. Page to travel to Colorado for the IME requested by Hertz.  Accordingly, the court will grant Hertz' motion to compel Mr. Page to travel to Greeley, Colorado, at his own expense, to participate in the IME with Dr. Thwaites.

### 2.    Disclosure of Dr. Kurzman's Raw Data

Hertz also requests this court to require plaintiffs to disclose the raw data utilized by Mr. Page's neuropsychologist, Dr. Kurzman.  See Docket Nos. 43, 54.  While Mr. Page originally disputed "whether it was customary and routine to share raw data between Dr. Kurzman or any neuropsychologist and other professionals," Mr. Page now concedes that "disclosure of the raw data used by Dr. Kurzman to a defense expert is warranted."  See Docket No. 53 at pages 15-16.  However, the parties still dispute whether the raw data should

16

be disclosed only to another professional or whether the raw data should be disclosed without restriction.  <u>See</u> Docket Nos. 53, 54.

"As a general rule, the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report."  <u>Kooima v. Zacklift Int'l, Inc.</u>, 209 F.R.D. 444, 446-47 (D.S.D. 2002).  Mr. Page has made it clear that Dr. Kurzman is a testifying expert in this case.  <u>See</u> Docket No. 53 at page 15.  As a testifying expert, Hertz is entitled to all information related to his testimony, including the raw data used by Dr. Kurzman.

In <u>Sapone v. Grand Targhee Inc.</u>, 2000 WL 35615926, *2 (D. Wyo. 2000) the defendant filed a motion requesting the district court to compel plaintiffs to produce the raw data used for testing because the information contained within the raw data served as a "foundation for [the expert's] opinions and [was] therefore highly relevant."  The plaintiffs argued that the motion was moot because the information had already been provided to defendant's expert neuropsychologist, with certain restrictions, including that the information not be copied or distributed and only be used for reference purposes. <u>Id.</u>  The district court granted defendant's motion to compel disclosure of the raw data used by plaintiff's neuropsychologist, rejecting the plaintiff's attempt to limit

17

any such disclosure of the raw data.  Id.  The court held that the defendant was "entitled to cross examine plaintiffs' expert witnesses on all information considered by [the] experts [in] arriv[ing] at their ultimate opinions."  Id.; see also Polich v. Purdential Financial, Inc., 646 F.3d 1116, 1118 (8th Cir. 2011) (holding that the defendant's request for raw data from the plaintiff's IME examination by his own physician were "reasonable as a matter of law").

Mr. Page is essentially attempting to limit the use of the raw data utilized by Dr. Kurzman in the same way the plaintiffs attempted to in Sapone.  This court rejects Mr. Page's contention for the same reason the court rejected it in Sapone.  Hertz is entitled to cross examine Dr. Kurzman on all the information he used in arriving at his opinion, including the raw data.  Therefore, this court will grant Hertz' motion to compel disclosure of Dr. Kurzman's raw data without restriction upon its use by Hertz.

## C.    Sanctions

Hertz argues that Mr. Page "flatly refused, without justification, to undergo" the IME with Dr. Thwaites "to which he already agreed."  See Docket Nos. 54 at page 10.  As a result, Hertz asks this court to impose sanctions upon Mr. Page in the form of dismissing his action.  See Docket Nos. 43, 54. Hertz argues in the alternative that Mr. Page should be barred from "presenting neuropsychological evidence in support of [his] claim at trial, since [he] has

blocked Hertz' effort to gather its own evidence on the issue." <u>See</u> Docket No. 54 at page 11.  Hertz also requests, in the alternative, that this court order Mr. Page to pay for his "own transportation to and attendance at a newly scheduled examination by Dr. Thwaites or to compensate [Hertz] in the amount of $5,826, representing the $4,750 billed by Dr. Thwaites plus a proportionate one-third share of the $3,230 travel costs advanced by [Hertz] for all three Denver examinations." <u>See</u> Docket No. 43 at page 14.  Mr. Page argues that he made a "genuine effort" to participate in the IME with Dr. Thwaites and that he "was simply overwhelmed" by the travel arrangements scheduled by Hertz, which he refers to as "extreme" and a "train wreck," and by the "nature of his condition." <u>See</u> Docket No. 53 at pages 6, 13-14.  As a result, Mr. Page argues that sanctions are not justified.  <u>Id.</u> at page 14.

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes the court where the action is pending to order sanctions if a party "fails to obey an order to provide or permit discovery, including an order under Rule...35..."  In this case, no court order was ever entered under Rule 35(a) requiring Mr. Page to participate in the IME with Dr. Thwaites.  Notwithstanding the requirements of Rule 35, however, "physical and mental examinations are usually arranged by stipulation of the attorneys, with the rule standing as a compulsory sanction that helps to produce stipulations."  8A Wright & Miller § 2234.2 at 485. "Plaintiffs who voluntarily submit to an examination by a physician selected by

defendant waive their rights to insist upon a [Rule 35] motion for an order of examination." Id.  See also Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 689 (10th Cir. 2007) (finding that a plaintiff's voluntary submission to an examination waives their right to insist upon a Rule 35 motion for an order to compel the examination).

Hertz cites Hardy v. Riser, 309 F.Supp 1234 (D. Miss. 1970) for the proposition that a court order is not necessarily required for a court to impose sanctions under Rule 37(b).  In Hardy, the defendants obtained a physical examination of the plaintiff under Rule 35 without court order.  Id. at 1235. The court noted that the "plaintiff agreed to the examination only because he knew the court would likely order it if he did not agree."  Id. at 1236.  The court stated that "under these circumstances, it is as if an order for physical examination, under Rule 35, had been entered."  Id.

While this is certainly some support for the proposition that a court order is not necessary to impose sanctions under Rule 37(b), the majority of courts deciding similar issues have come to the contrary conclusion.  See Swofford v. Eslinger, 2009 WL 1025223, *2 (M.D. Fla. 2009) (holding that "the provisions of Rule 37(b) are applicable to failures to comply with a court order"); Ahmed v. L&W Engineering, Co., 2009 WL 2143799, *2 (E.D. Mich. 2009) (holding that at the time the plaintiff "failed to attend the IMEs there was no court order pursuant to [Rule] 35 and no violation of the same" and as such denying

20

sanctions under Rule 37(b)); <u>Sanchez v. M & H Enter.</u>, 2007 WL 923686, *3
(D. Nev. 2007) (rejecting plaintiffs' contention that sanctions may be imposed
under Rule 37(b) even when no court order has been violated); <u>In re WRT
Energy Securities Litigation</u>, 246 F.R.D. 185, 194 (S.D.N.Y. 2007) (holding that
Rule 37(b) does not apply when there is no court order requiring plaintiffs to
participate in certain discovery requests); <u>Turner v. Hudson</u>, 1992 WL 51570,
*6 (S.D.N.Y. 1992) ("Rule 37(b)(2) requires a prior order, but does not by its
terms specifically require an order issued pursuant to Rule 37(a)...Provided
that there is a clearly articulated order of the court requiring specified discover,
the district court has the authority to impose Rule 37(b) sanctions for
noncompliance with the order."); <u>Petroleum Ins. Agency, Inc. v. Hartford Acc. &
Indem. Co.</u>, 106 F.R.D 59 (D. Mass. 1985) (holding that sanctions could not be
imposed under Rule 37(b) for failure to comply with discovery where no court
order has been entered compelling discovery).  As such, this court finds that,
although there is limited authority supporting Hertz' position, the majority of
courts require a violation of a pre-existing court order to impose sanctions
under Rule 37(b).  Therefore, this court finds that Rule 37(b) does not apply in
this case since there was no court order requiring Mr. Page to participate in the
IME with Dr. Thwaites.

　　　　Nevertheless, "[t]he Court also possesses inherent power to impose
sanctions in matters arising from discovery abuses."  <u>Doblar v. Unverferth Mfg.</u>

21

Co., Inc., 185 F.R.D. 258, 261 (D.S.D. 1999); see also Sylla-Sawdon v.

Unirolyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995) (holding that the

court has discretion to impose a sanction under its inherent disciplinary

power); Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993) (same).

Courts enjoy the inherent equitable power "to levy sanctions in response to

abusive litigation practices." Roadway Express, Inc. V. Piper, 447 U.S. 752,

765 (1980); see also Chambers v. NASCO, Ins., 501 U.S. 32, 44 (1991) (a court

has authority to "manage [its] own affairs so as to achieve the orderly and

expeditious disposition of cases").

Based on a review of the material submitted in the briefs by both parties

as well as exhibits documenting the communications between Hertz and

Mr. Page's counsel, it is clear that the parties had reached an agreement on the

date and time that the IME would take place with Dr. Thwaites and that

Mr. Page had agreed to participate in the IME.  Although Mr. Page originally

appeared for his appointment with Dr. Thwaites, the IME was never carried

out.  Hertz argues that Mr. Page refused to cooperate with Dr. Thwaites and it

was Mr. Page that terminated the IME.  Conversely, Mr. Page argues that he

terminated the IME because of the nature and severity of his injuries and

because Dr. Thwaites made Mr. Page believe it was alright to leave.

Dr. Thwaites' progress notes as to the scheduled IME with Mr. Page

indicate that Mr. Page arrived at Dr. Thwaites' office shortly before the

scheduled IME.  However, Mr. Page was visibly upset upon arrival, was reluctant to shake Dr. Thwaites' hand, and did not respond to Dr. Thwaites when he introduced himself.  As the examination began, Dr. Thwaites noted that Mr. Page was "very abrupt in his responses" and answered several questions with "I don't know" responses.  Within five minutes of starting the examination, Mr. Page told Dr. Thwaites that he "didn't feel good" about the examination and again asked about the basis for the exam.

After explaining the purpose of the exam, Dr. Thwaites explained to Mr. Page that he could take a break at any point and that "it was his choice to either participate in the examination or not" but that if he chose to stay, the "consultation would only be helpful if he participate[d] fully in the examination, including both the interview and testing process."   Dr. Thwaites then asked Mr. Page if he wanted to take a break and Mr. Page indicated that he would.  Dr. Thwaites encouraged Mr. Page to contact his attorney or any other individual he would like to discuss the case with during the break.  Roughly an hour later,  Mr. Page returned and indicated that he did not want to continue the IME.

Mr. Page asserts, at least in part, that the failed IME was a result of the "extreme conditions under which [he was] placed."  See Docket No. 53 at page 6.  However, based on the record before this court, it appears that Mr. Page

exaggerates many of the circumstances and fails to acknowledge his own statements with regards to the arrangements that were made with Hertz.

First, Mr. Page asserts that his physical condition, including the nature and severity of his injuries, prevented him from continuing with the IME. While this court certainly does not minimize in any way the nature and extent of Mr. Page's injuries nor the amount or severity of the pain associated with those injuries, the court finds it compelling that at no point did Mr. Page mention to Dr. Thwaites that he was in any kind of pain.  The only statements Mr. Page made to Dr. Thwaites was that he "didn't feel good" about the examination, that when he was in the office he "[couldn't] breathe, that "this should have been the first examination", and that he had "seen too many doctors [that] week."  See Docket No. 47-3.  At no point did Mr. Page indicate to Dr. Thwaites that he could not continue the IME because of physical pain, but rather that he could not participate because he was tired.  See Docket No 55-5.

Additionally, this court finds it compelling that Mr. Page has been able to participate in examinations and consult with his own doctors in both Rapid City, South Dakota, and Chicago, Illinois, when it was for his own benefit, as well as to take time to visit the Sturgis motorcycle rally, and to take a week-long vacation to Cuba.  Thus, the court finds that any discomfort Mr. Page may have been in was not a substantial justification for terminating the IME or,

perhaps more significantly, later refusing to reschedule the IME with

Dr. Thwaites in Colorado.

Second, Mr. Page argues that the conditions regarding his travel

arrangements made it difficult for him to sleep well.  Mr. Page asserts that

maintenance at the hotel kept him up at night, that he had to take a taxi at his

own expense to the IME with Dr. Thwaites, and that the shuttle service

provided by Hertz was inadequate.  See Docket No. 43.  There is no indication

in the record, nor does Mr. Page assert, that Hertz took any intentional steps to

make Mr. Page's stay in Colorado less than acceptable.  In fact, the record

indicates just the opposite.  Hertz, at great expense, scheduled the flight from

Hillsdale, Ontario, Canada, to Denver, Colorado, arranged for wheelchair

services at the airport, provided shuttle service from the airport to the hotel,

and shuttle services to some of his appointment.

Some hiccups in the plan did occur.  The shuttle driver who was to

transport Mr. Page from Denver to Greeley got lost, adding additional time to

the drive.  Mr. Page also asserts that he awoke on the morning of May 27 to

attend the IME with Dr. Thwaites and discovered that no transportation had

been scheduled for him and that he "ended up having to hire a taxi cab and

pay for it out of his own pocket."  See Docket No. 53 at page 6.  However,

Mr. Page exaggerates this claim as he already knew that no transportation

would be available for him on that date.  On May 26, Mr. Page's counsel

25

informed Hertz that the hotel did not have a shuttle so counsel "advised [Mr. Page] to take a taxi to Dr. Thwaites' office in the morning and keep the receipts." See Docket No. 55-4. Thus, Mr. Page did not awake on the morning of May 27 expecting a shuttle to transport him to Dr. Thwaites' office because he had been informed the day prior by his own counsel that he would be required to take a taxi. While the transportation and hotel plans did not go as Mr. Page would have liked, or as Hertz had planned, this court cannot conclude, as does Mr. Page, that the arrangements amounted to a "train wreck."

Third, Mr. Page argues that he was justified in leaving the scheduled IME with Dr. Thwaites because Dr. Thwaites told him that he was free to leave and that "it should come as no surprise that he left." See Docket No. 53 at page 11. While the facts certainly indicate, as Mr. Page argues, that Dr. Thwaites told Mr. Page that he was free to leave, when read in context, it appears to the court that Dr. Thwaites' statements regarding Mr. Page's freedom to leave were based on Mr. Page's attitude toward the IME, his general unresponsiveness to the questions posed by Dr. Thwaites, and his apparent unwillingness to cooperate in the examination.

Finally, the court considers the fact that Mr. Page refused to work with Hertz to reschedule the IME with Dr. Thwaites. See Docket No. 47-5. The e-mail communication between Hertz and counsel for Mr. Page clearly indicates

26

that on more than one occasion Hertz communicated with counsel for Mr. Page in an attempt to reschedule the IME.  Id.  Ultimately however, Mr. Page refused to cooperate and suggested that he would only make himself available if the IME were to take place in "Toronto or upper New York."  Id.  Furthermore, Mr. Page also indicated that he was not willing to cover the costs of any rescheduled IME nor would he reimburse the costs of the failed IME and indicated that "[i]f that means a motion, so be it."  Id.

Based on the totality of the circumstances, the court finds that Mr. Page's failure to participate in the previously agreed-upon IME with Dr. Thwaites was not substantially justified and that any such conditions set forth by Mr. Page as justification for failing to complete the IME were exaggerated and unjustified.   Additionally, the court finds it compelling that while Mr. Page argues he was justified in leaving the scheduled IME with Dr. Thwaites, Mr. Page thereafter refused to work with Hertz to reschedule the IME and essentially invited Hertz to file this motion.  Finally, based on the facts and circumstances surrounding the IME and attempts to reschedule the IME, this court finds that Mr. Page has engaged in litigation practices for the purpose of preventing Hertz from obtaining information pertinent to the litigation.  As such this court find that sanctions are appropriate.

Hertz asserts that "the most appropriate [sanction] would be dismissal of the complaint."  See Docket No. 43 at page 12.  Dismissal of a lawsuit is a

particularly severe sanction.  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).  In Menz v. New Holland North America, Inc., 440 F.3d 1002, 1006 (8th Cir. 2006) the court held that it would be "unreasonable to excuse a finding of bad faith when imposing a more severe sanction, the outright dismissal of a plaintiff's case."  Additionally, in deciding whether to dismiss an action, the court must consider whether there is any less severe sanction that will "adequately remedy the effect of the delay on the court and the prejudice to the opposing party."  Mann v. Lewis, 180 F.3d 145, 147 (8th Cir. 1997).  In this case, the court finds that outright dismissal of Mr. Page's case would be imprudent and that a less severe sanction is more appropriate.

Hertz argues, in the alternative, that "in the event that this Court finds that dismissal of the entire action is not appropriate, and if Gary Page won't appear for the neuropsychological IME, the Court should prohibit Plaintiffs from presenting their own nueropsychological evidence..."  See Docket No. 43 at 13-14.  As indicated above, this court has granted Hertz' motion to compel Mr. Page to travel to Colorado to participate in the IME with Dr. Thwaites.  Thus, this court will not, at this juncture in the case, enter an order prohibiting Mr. Page from introducing nueropsychological evidence at trial.

As a final alternative, Hertz requests compensation "in the amount of $5,826, representing the $4,750 billed by Dr. Thwaites plus a proportionate one-third share of the $3,230 travel costs advanced" by Hertz for Mr. Page to

participate in the three examinations in Denver and Greeley, Colorado.  See
Docket No. 43 at page 14.  Mr. Page argues that the $4,750 billed by
Dr. Thwaites is unreasonable and further argues that he should not be
assessed travel costs since "the travel costs would have been approximately the
same" even if no IME had been scheduled with Dr. Thwaites.  See Docket No.
53 at page 17.

Mr. Page cites Beecham v. City of West Sacramento, 2009 WL 689729,
*3-4 (E.D. Cal. 2009) for the proposition that Dr. Thwaites' fee should be
reduced.  In Beecham, the district court held that "an award of monetary
sanctions must be reasonable."  Id. at *3.  The court in Beecham ordered the
parties who failed to appear at IMEs to pay cancellation fees, however, the
court reduced the fee based on the facts of that case, including that the exams
were scheduled to begin at "3:00 p.m. and it was unreasonable to assume that
[the] exam would proceed past 5:00 p.m."  Id.  Therefore, the court held that a
"cancellation fee reflecting more than a two-hour examination [was] not
reasonable."  Id.

This case is distinguishable from Beecham in that the IME with
Dr. Thwaites was scheduled from 8:00 a.m. to 5:00 p.m., far longer than the
two hours scheduled in Beecham.  While the fees must be reasonable, this
court cannot say that Dr. Thwaites fee of $4,750 is unreasonable.  See Hedrick
v. County of Trinity, 2010 WL 4823810 (E.D. Cal. 2010) (holding that

$7,383.95 in fees and expenses related to a deposition and IME was an appropriate monetary sanction); Hogge v. A.W. Chesterton Co., 2007 WL 2854500, *5 (N.D. Cal. 2007) (holding that an award of $6,200 to cover foreseeable expert witness cancellation fees was appropriate); Parker v. Piper, 2006 WL 1659745, *7-8 (D. Colo. 2006) (ordering plaintiff to pay the defendants' IME expenses as a result of plaintiff failing to appear for two scheduled IMEs). Therefore, this court will order Mr. Page to reimburse Hertz $4,750. The travel expenses for Mr. Page would have been the same for Hertz whether two IMEs or three took place. Therefore, the court will not order Mr. Page to reimburse Hertz any travel expenses.

Mr. Page also has filed a request for oral argument with respect to Hertz's motion for sanctions pursuant to D.S.D. Civ. LR 7.1C. See Docket No. 58. Local Rule 7.1C states that "oral argument shall be had only upon order of the court." The courts finds that the written record in this case is sufficient and finds that oral argument on the motion for sanctions is not necessary for the court to rule on the motion. Therefore, Mr. Page's request for oral argument will be denied.

**D.    Motion to Extend Expert Designation Deadlines**

Hertz also requests this court to extend the deadline for Hertz to designate a neuropsychologist as an expert in this case. See Docket Nos. 43, 54. Rule 16 of the Federal Rules of Civil Procedure governs this dispute. Rule

16 requires the district court to issue an order setting deadlines for various stages of the litigation.  <u>See</u> Fed. R. Civ. P. 16(b)(1) (requiring that the court set deadlines for joining parties, amending pleadings, and filing motions, and allowing the district court to set additional deadlines).  A court may modify the schedule upon a showing of good cause.  Fed. R. Civ. P. 16(b)(4).

Rule 6 of the Federal Rules of Civil Procedure controls the granting of an extension of time.  That rule provides in pertinent part as follows:

> (b) Extending Time.
>  (1) *In General.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>   (A) with or without motion or notice if the court acts, or if a request is made, *before* the original time or its extension expires; or
>   (B) on motion made *after* the time has expired if the party failed to act because of excusable neglect.

<u>See</u> Fed. R. Civ. P. 6(b)(1) (emphasis added).  Both Rule 6 and Rule 16 must be interpreted in a manner so as to achieve the "just, speedy, and inexpensive determination of every action."  <u>See</u> Fed. R. Civ. P. 1.

The deadline for Hertz to designate experts had not passed when the motion to extend the deadline was filed by Hertz.[3]  Because Hertz filed their motion to extend their expert designation deadline *prior* to the expiration of

---

[3] The scheduling deadline for identifying experts was October 3, 2011.  <u>See</u> Docket No. 39.  Hertz filed its motion for sanctions or in the alternative, to compel and to extend expert disclosure deadline on August 2, 2011.  <u>See</u> Docket No. 43.

that deadline, Hertz need only demonstrate "good cause;" they do not have to also demonstrate excusable neglect.

The good cause standard for extending deadlines under Rule 16 requires that the moving party demonstrate diligence in attempting to meet the court's deadline.  Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001).  " '[T]he existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision."  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

Here, Hertz moved for an extension of the expert designation deadline prior to the expiration of that deadline.  The reason for the requested extension was the parties' inability to agree to reschedule Mr. Page's failed IME with Hertz' expert, Dr. Thwaites, despite repeated attempts by Hertz.  See Docket No. 43-5.  The court has now resolved that issue in favor of Hertz.

Mr. Page does not address Hertz' request for an extension of the deadlines for expert disclosure in his reply to Hertz' motion.  In view of Mr. Page's lack of objection to this request, and the additional discovery which Hertz indicates has still not been completed, the court finds that there is good cause for Hertz' request and no prejudice to Mr. Page.

The scheduling deadlines in this case are the exclusive province of the district court.  However, this court will recommend extending Hertz' expert designation deadline.

## CONCLUSION

Based on the forgoing discussion, Hertz's motion is granted in part and denied in part as follows.  It is hereby

ORDERED that Hertz' motion to compel Mr. Page to participate in an IME is granted.  Mr. Page shall make himself available and attend an independent medical examination by Dr. Thwaites in Greeley, Colorado, at a date and time mutually acceptable to Hertz and Dr. Thwaites, within 45 days of this order.  Mr. Page shall bear all travel and lodging expenses related to the IME.  It is further

ORDERED that Mr. Page shall immediately make available to Hertz and Dr. Thwaites the raw data utilized by his own nueropsychologist, Dr. Kurzman. It is further

ORDERED that Mr. Page shall pay $4,750 to Hertz, representing the amount billed  by Dr. Thwaites to Hertz as a result of Mr. Page's refusal to undergo the previously scheduled IME.  Hertz's request to dismiss the Pages' complaint or, in the alternative, bar Mr. Page from introducing neuropsychological evidence at trial is denied.  It is further

ORDERED that Mr. Page's request for oral argument on the motion for sanctions is denied.  It is further

ORDERED  that Hertz shall be entitled to reasonable attorney's fees and costs for bringing this motion to compel.  Hertz shall file an affidavit with proof

of service setting forth the time reasonably spent on the present motion, the

hourly rate requested for attorney's fees and costs, and any factual matters

pertinent to the motion for attorney's fees within twenty-one days of this order.

Mr. Page shall file any and all objections to the allowance of fees within

fourteen calendar days after receipt of service of Hertz's motion and affidavit.

Mr. Page may, by counter affidavit, controvert any of the factual matters

contained in Hertz' motion and may assert any factual matters bearing on the

award of attorney's fees.  D.S.D. LR 54.1(C).  Hertz shall have seven days

thereafter to file a reply.  Finally, it is

RECOMMENDED that the district court extend Hertz's deadline for

disclosing its expert opinions by 90 days, and that all deadlines following this

disclosure be likewise extended.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration

of this order before the district court upon a showing that the order is clearly

erroneous or contrary to law.  The parties have fourteen (14) days after service

of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A),

unless an extension of time for good cause is obtained.  See Fed. R. Civ. P.

72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in

the waiver of the right to appeal questions of fact.  Id.  Objections must be

timely and specific in order to require review by the district court.  Thompson

34

v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

      Dated November 15, 2011.

              BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

35